IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEVON CANNON,                        : | | |
|       *Plaintiff*,           : | CIVIL ACTION | |
|                                     : | | |
| v.                                                 : | | |
|                                     : | | |
| CITY AND COUNTY OF                 : | | |
| PHILADELPHIA et al.,                    : | | |
|       *Defendants*.         : | No. 14-5388 | |

PRATTER, J.                                                                                                      DECEMBER 29, 2014

**MEMORANDUM**

**I.     INTRODUCTION**

In this lawsuit arising from Devon Cannon's encounter with the Philadelphia Police in December 2012, Mr. Cannon alleges that his constitutional rights were violated and he was the victim of various state torts. He filed suit against the City of Philadelphia (the "City"), Philadelphia Police Commissioner Charles Ramsey (the "Commissioner"), Philadelphia Police Officer Aaron Willis, and two John Doe Philadelphia Police Officers. Now, the Defendants move to dismiss all claims against the City and the Commissioner, as well as a civil conspiracy claim against Officer Willis. For the reasons that follow, the Court will grant the Motion with respect to Mr. Cannon's claims against the City and the Commissioner, but deny the Motion with respect to the civil conspiracy claim against Officer Willis.

**II.    ALLEGATIONS IN THE COMPLAINT[1]**

On or about December 2, 2012, Mr. Cannon was driving his car in West Philadelphia with Andre Meyers as a passenger. Allegedly for no apparent reason, Officer Willis followed

---

[1] When ruling on a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 509 n.1 (2002).

1

Mr. Cannon in his police vehicle to a nearby Lowe's Home Improvement business. Officer Willis stopped Mr. Cannon's vehicle in the Lowe's parking lot and conducted an investigatory stop, ordering Mr. Cannon to come over to Officer Willis' vehicle. Officer Willis forced Mr. Cannon against the vehicle and handcuffed him. Officer Willis then transported Mr. Cannon in his police vehicle a short distance to another part of the Lowe's parking lot, at which time Officers John Doe 1 and John Doe 2 arrived in their police vehicles. The Officers searched Mr. Cannon's vehicle without permission and did not discover anything suspicious. However, Officers Willis and Doe 1 searched the vehicle a second time and took $800.00 that they discovered in Mr. Cannon's armrest. Officer Doe 1 handed Officer Willis a portion of the money, and Officer Willis told Mr. Cannon that he "got all the big busts" and he was "going to stop you every time I see you." (Compl. ¶¶ 40-41).

Officer Willis arrested Mr. Cannon for disorderly conduct and fabricated facts and evidence to support the arrest. According to Mr. Cannon's account, Officer Willis stated that he was "catching up on paperwork" in the Lowe's parking lot when he observed Mr. Cannon cause a crowd to form. (Compl. ¶ 42). Mr. Cannon also alleges that the City and the Commissioner were "charged with the responsibility and duty of testing, hiring, training, monitoring, supervising and disciplining the individually named defendant Police Officers and all other employees of the [Philadelphia Police Department]." (Compl. ¶ 54).

The Complaint contains 13 counts, including constitutional claims against the City and Commissioner Ramsey—based on the Fourth Amendment (Count 1), First Amendment (Count 3), and Equal Protection clause (Count 5)—and a civil conspiracy claim against Officers Willis, Doe 1, and Doe 2 (Count 13). Defendants move to dismiss all the claims against the City and Commissioner Ramsey, and the civil conspiracy claim against Officer Willis.

**III.** **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Although Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 617 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to

the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). The Court must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). Nonetheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and internal quotation marks omitted).

## IV. DISCUSSION

### A. MR. CANNON'S CLAIMS AGAINST THE CITY AND COMMISSIONER RAMSEY

"To determine the sufficiency of a complaint under the pleading regime established by [*Iqbal* and *Twombly*], a court must take three steps: First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

#### 1. <u>Mr. Cannon's Fourth Amendment Claims Against the City and Commissioner Ramsey</u>

##### a. The Elements of Mr. Cannon's Fourth Amendment Claim

The Fourth Amendment protects against unreasonable searches and unreasonable seizures. "To succeed on a Fourth Amendment claim, a plaintiff must show that the defendant's actions constituted a 'search' or 'seizure' within the meaning of the Fourth Amendment and were

4

'unreasonable' under the circumstances." *Verdier v. Borough*, 796 F. Supp. 2d 606, 619 (E.D. Pa. 2011). "Absent immunity or an adequate defense, a person who, acting under color of state law, directly and intentionally applies the means by which another is seized in violation of the Fourth Amendment can be held liable under § 1983." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272-72 (3d Cir. 2000).

Different standards of liability apply to the City (as a municipality) and the Commissioner (as a supervisor). The City cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, the plaintiff must demonstrate that the violation of his rights was caused by either a policy or a custom of the municipality. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). To state a claim against the City under § 1983, Mr. Cannon must allege that (1) the City had a policy or custom that deprived him of his constitutional rights; (2) the City acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom. *See Stewart v. Moll*, 717 F. Supp. 2d 454, 464-65 (E.D. Pa. 2010). To survive the Motion to Dismiss, Mr. Cannon must allege that the City, through one of its policymakers, affirmatively adopted the policy or acquiesced in the widespread custom that caused the violation. *See Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). To be actionable under § 1983, a failure to train must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact or are foreseeably likely to do so. *Id.* Moreover, Mr. Cannon must allege that the City's practice proximately

caused the injuries he suffered. *See Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Proof of proximate causation requires that there be "an affirmative link between the policy and the particular constitutional violation alleged." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985).

With respect to supervisory liability, there are two theories that may apply. First, like municipalities, "[i]ndividuals who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.*

b. Allegations Entitled to the Assumption of Truth

Next, the Court must decide which factual allegations are entitled to the assumption of truth at the motion-to-dismiss stage. The Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court must also disregard "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (internal alterations omitted). In *Iqbal*, the Supreme Court disregarded allegations that "petitioners knew of, condoned, and willfully and maliciously agreed to subject [respondent] to harsh conditions of confinement as a matter of policy, solely on account of [his] religion, race, and/or national origin" and that "[one defendant]

was the principal architect of this invidious policy, and that [another defendant] was instrumental in adopting and executing it." *Id.* at 680-81 (internal quotation marks and citations omitted). The Supreme Court called those allegations "nothing more than a formulaic recitation of the elements of a constitutional discrimination claim," *id.* at 681 (internal quotation marks omitted), and dismissed those claims because they were conclusory, *id.* Similarly, in *Santiago*, our Court of Appeals explained that allegations of supervisory liability amounting to "the supervisor told the supervisee to do what they did" qualify as "a formulaic recitation of the elements of a [supervisory liability] claim." 629 F.3d at 131 (quoting *Iqbal*, 556 U.S. at 680-81).

The following are the allegations in Mr. Cannon's Complaint involving the City and/or the Commissioner:

a) The City and the Commissioner "knew or should have known that the Individual Defendant Police Officers were routinely and systematically stealing property from citizens during the course and scope of their duties, and implementing a custom, policy and practice of violating the Constitutional Rights of individuals through, *inter alia*, theft, failing to fill out property receipts, fabricating evidence, falsifying affidavits and testimony, use of excessive force, exploiting overtime, and other criminal conduct." (Compl. ¶ 57).

b) The City and the Commissioner "continued to tacitly approve, permit, and/or treat with deliberate indifference custom, policy and practice of the herein alleged illegal conduct of Police Officers under their command." (*Id.* ¶ 58).

c) The City and the Commissioner "continued to fail to supervise, monitor and/or implement a policy of meaningful discipline and/or investigation regarding Constitutional violations, and unlawful conduct by Police Officers." (*Id.* ¶ 59).

d) The City and the Commissioner "willfully and knowingly implemented and/or facilitated a custom, policy and practice granting Police Officers unchecked authority, power and discretion in the implementation of investigatory tactics and methods regarding drug interdiction and the sale of illegal narcotics resulting in the Constitutional violations against Philadelphia citizens." (*Id.* ¶ 60).

e) The City and the Commissioner "willfully and knowingly implemented and/or facilitated a custom, policy and practice, allowing insufficient or lack of monitoring, auditing and/or approving overtime hours accrued by the Defendant Police Officers, which Defendants knew substantially, contributed to and provided a further incentive to unlawfully arrest individuals and fabricate evidence." (*Id.* ¶ 61).

f) "Insufficient independent and objective oversight, auditing monitoring, training supervising, disciplining and training by the [City and the Commissioner] proximately caused and facilitated the abuse of police power, and thus was the proximate cause of the herein-alleged violations Mr. Cannon's Constitutional and Civil Rights protected under the 4th and 14th Amendments." (*Id.* ¶ 62).

g) "As a direct and proximate result of the custom, policy and practice regarding the unmonitored and aggressive implementation of investigation techniques, and the deliberate indifference and callous disregard thereof, implemented by [the City, the Commissioner,] and employees, under the Color of State Law, Mr. Cannon was deprived of his right to be secure in his person or property . . . ." (*Id.* ¶ 63).

h) "As a direct and proximate result of the custom, policy and practice regarding the implementation of stop and frisk for the purpose of developing or discovering reasonable suspicion and/or probable cause, unconstitutional investigatory detentions, and unlawful

stops, arrests, searches and seizures, and the deliberate indifference and callous disregard thereof, implemented by the [the City, the Commissioner,] and employees, committed under the Color of State Law, Mr. Cannon was deprived of his right to be secure in his person and property . . . ." (*Id.* ¶ 64).

i) "As a direct and proximate result of all the aforementioned conduct, custom, policy and/or practice, Mr. Cannon was deprived of his right to be secure in his person and property . . . ." (*Id.* ¶ 71).

Several of Mr. Cannon's allegations are "mere restatements of the elements of [his] supervisory liability claims, [and] are not entitled to the assumption of truth." *Santiago*, 629 F.3d at 132. In particular, the entirety of allegations (a), (b), (c), (d), (f), (g), (h), and (i) are formulaic recitations of the elements of municipal and supervisory liability, combined with conclusory allegations that the City and Commissioner Ramsey approved of or failed to stop the offensive conduct. In essence, those paragraphs allege, without additional facts, "the supervisors approved of or failed to stop what the supervisees actually did." As our Court of Appeals has explained, such allegations are not entitled to the assumption of truth. *See id.* at 131.

            c.      The Plausibility of Mr. Cannon's Fourth Amendment Claim

Finally, the Court must determine whether those allegations entitled to the assumption of truth state a plausible claim upon which relief may be granted. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Santiago*, 629 F.3d at 132 (quoting *Iqbal*, 556 U.S. at 678). Based on the well-pleaded allegation (e), *see supra*, Mr. Cannon has not stated a claim under § 1983 against the City and the Commissioner for a Fourth Amendment violation. Absent additional well-pleaded allegations, the Court cannot find it plausible that a failure to

9

monitor overtime as alleged in paragraph 61 of the Complaint (allegation (e) above) was the "moving force" or otherwise the proximate cause of Mr. Cannon's alleged injuries.

2. Mr. Cannon's First Amendment Claims Against the City and Commissioner Ramsey

a. The Elements of Mr. Cannon's First Amendment Claim

The First Amendment of the U.S. Constitution provides: "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. "To state a cognizable claim under § 1983 for the violation of First Amendment rights, a plaintiff must establish three elements: (1) that he engaged in constitutionally protected activity; (2) that he was subjected to adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that there was a causal link between the plaintiff's constitutionally protected activity and the defendant's alleged adverse actions." *See Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003). The standards for municipal liability and supervisory liability are the same as for Mr. Cannon's Fourth Amendment claim. *See supra* Part IV.A.1.a.

b. Allegations Entitled to the Assumption of Truth

The following are the allegations in Mr. Cannon's Complaint involving his First Amendment claim and the City of Philadelphia and/or Commissioner Ramsey:

a) The City and the Commissioner were "charged with the responsibility and duty of testing, hiring, training, monitoring, supervising and disciplining the individually named defendant Police Officers and all other employees of the PPD." (Compl. at ¶ 54).

b) The City and the Commissioner "have a custom policy and practice of granting Police Officers unchecked discretionary power with regard to what constitutes Obscene

>   Language and/or Gestures constituting Disorderly Conduct under 18 Pa. § 5503." (*Id.*
>   ¶ 85).
>
> c) The City and the Commissioner "have a custom policy and practice of failing to train, supervise, monitor, and/or audit Police Officers with regard to what constitutes Obscene Language and/or Gestures constituting Disorderly Conduct under 18 Pa. § 5503." (*Id.* ¶ 86).
>
> d) The City and the Commissioner "knew that the individual Defendants and Police Officer[s] under its command routinely and systematically arrest individuals for exercising their rights protected by the first amendment, in areas such as public protest and recording the activities of police officers on video." (*Id.* ¶ 87).
>
> e) "Mr. Cannon exercised his clearly established Rights under the First Amendment to Free Speech and to protest and question his unlawful arrest, the unlawful racial profiling, being referred to as a drug dealer, threatened with continued harassment and the unconstitutional arrests, searches and harassment of himself and other Black Males in Philadelphia." (*Id.* ¶ 88).
>
> f) "As a direct and proximate result of the conduct and Custom Policy and Practice of the Defendant Philadelphia, committed under the Color of State Law, Mr. Cannon was deprived of his Right to Freedom of Speech under the 1rst [sic] Amendment of the United States Constitution through 42 U.S.C. §§ 1983, 1985, 1988." (*Id.* ¶ 92).

Once again, allegations (b) and (c) constitute formulaic recitations of the elements of a supervisory and/or municipal liability claim because, in essence, they are assertions that the City and Commissioner Ramsey permitted the Officers to do what they allegedly did. Under

*Santiago*, and absent additional factual allegations to support those assertions, they are not entitled to the assumption of truth.

        c.      The Plausibility of Mr. Cannon's First Amendment Claim

Based on allegations (a), (d), (e), and (f), *see supra*, Mr. Cannon has failed to state a claim under § 1983 against the City and Commissioner Ramsey for a First Amendment violation. There are no well-pleaded allegations connecting the City or the Commissioner to the violation of Mr. Cannon's First Amendment rights. For example, the Complaint alleges only that the City—not Commissioner Ramsey— caused the violation of Mr. Cannon's First Amendment rights. Absent a well-pleaded allegation that Commissioner Ramsey directed or permitted the Officers to violate Mr. Cannon's First Amendment rights, the Court cannot find it plausible that Commissioner Ramsey caused Mr. Cannon's injuries. Additionally, the Complaint includes no well-pleaded allegations from which the Court can find it plausible that the City "acted deliberately and was the moving force behind the deprivation" of Mr. Cannon's First Amendment rights. *See Moll*, 717 F. Supp. 2d at 464-65. Consequently, the Court must dismiss Mr. Cannon's First Amendment claims against the City and the Commissioner.

        3.      <u>Mr. Cannon's Equal Protection Claims Against the City and Commissioner Ramsey</u>

        a.      The Elements of Mr. Cannon's Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment prohibits states from intentionally discriminating between individuals on the basis of race. *See Shaw v. Reno*, 509 U.S. 630, 642 (1993). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (internal citations and quotation marks omitted). "Intentional

discrimination can be shown when: (1) a law or policy explicitly classifies citizens on the basis of race; (2) a facially neutral law or policy is applied differently on the basis of race; or (3) a facially neutral law or policy that is applied evenhandedly is motivated by discriminatory intent and has a racially discriminatory impact." *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005) (internal citations omitted). The standards for municipal liability and supervisory liability are the same as for Mr. Cannon's Fourth Amendment claim. *See supra* Part IV.A.1.a.

                b.        Allegations Entitled to the Assumption of Truth

The following are the allegations in Mr. Cannon's Complaint involving the City of Philadelphia and/or Commissioner Ramsey:

a) "As a direct and proximate result of the custom, policy and practice regarding the implementation of reasonable suspicion and/or probable cause based on flight and/or in a high crime area, and deliberate indifference and callous disregard thereof, employed by the [City, the Commissioner,] and its employees, committed under the color of state law, the plaintiff was deprived of his right to Equal Protection of the Law under the 14th Amendment of the United States Constitution through 42 U.S.C. §§ 1983, 1985, 1988." (Compl. ¶ 112).

b) "Insufficient independent and objective oversight, auditing, monitoring, training supervising and disciplining police officers regard what constitutes a high crime area allows for the abuse of police power, and differential application of the law against citizens based on an arbitrary assessment of a community's crime level to support a different standard for probable cause and/or reasonable suspicion." (*Id.* ¶ 113).

c) "The implementation of this policy and failure to properly train, audit, monitor and discipline caused an adverse impact on African American Males, who are routinely

racially profiled as potential drug dealers and/or stopped under the pretext of a 'high-crime' area." (*Id.* ¶ 114).

d) "As a direct and proximate result of the acts of all the defendants, the plaintiff sustained pain, permanent injury . . . ." (*Id.* ¶ 115).

c. The Plausibility of Mr. Cannon's Equal Protection Claim

Even assuming that all of the allegations in the Complaint are true, the Complaint fails to state a claim under the Equal Protection Clause against the City and Commissioner Ramsey because it fails to allege any discriminatory intent. The Complaint does not allege that there is a policy explicitly classifying citizens on the basis of race. Rather, the Complaint appears to state either (1) that the City and Commissioner Ramsey permit Officers to apply different standards in high crime areas, or (2) that a facially neutral law is applied differently on the basis of race. Because there is no allegation in the Complaint that either the City or Commissioner Ramsey acted based on discriminatory intent or purpose, the Equal Protection claim must fail.

B. CIVIL CONSPIRACY CLAIM AGAINST OFFICER WILLIS

The final portion of Defendants' Motion to Dismiss involves Count 13 of the Complaint, in which Mr. Cannon attempts to state a claim for civil conspiracy against Officers Willis, Doe 1, and Doe 2. "To prove a civil conspiracy [under Pennsylvania law], it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means," *Thompson Coal Co. v. Pike Coal. Co.*, 412 A.2d 466, 473 (Pa. 1979), "and that they acted with malice," *Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 174 (Pa. 1997). The Defendants argue that Mr. Cannon's civil conspiracy claim should be dismissed because "agents of a single entity cannot conspire among themselves." *Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. Ct. 2006). The Defendants believe that Officers Willis, Doe

14

1, and Doe 2 cannot conspire, as a matter of law, because they are all members of the Philadelphia Police Department.

Defendants' argument is premised on what is known as the "intracorporate conspiracy doctrine." *See Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 514 (E.D. Pa. 2014). As this Court discussed in a recent opinion, the scope of the intracorporate conspiracy doctrine under Pennsylvania law is unclear. *See id.* Federal courts in the Third Circuit have explained that agents acting in their individual capacities rather than their official capacities *can* be liable for civil conspiracy. *See, e.g.*, *Heffernan v. Hunter*, 189 F.3d 405, 412-13 (3d Cir. 1999) ("[C]ourts that have followed the [intracorporate conspiracy] doctrine allow an exception when the employees have acted for their sole personal benefit and thus outside the course and scope of their employment. That exception is based on the proposition that since the employer would not be subject to liability under *respondeat superior*, it would not be a conspirator."); *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 397, 313 (3d Cir. 2003); *Robison v. Canterbury Village, Inc.*, 848 F.2d 424, 431 (3d Cir. 1988) (noting that a conspiracy may exist between a corporation and an officer "if the officer is acting in a personal, as opposed to official, capacity"); *Lee v. SEPTA*, 418 F. Supp. 2d 675, 681 (E.D. Pa. 2005) ("An employer and its officers and employees *acting in the scope of their duties* constitute one legal person for purposes of conspiracy law and therefore cannot conspire together." (emphasis added)). However, "at least one panel of the Pennsylvania Superior Court, in a nonprecedential decision, has opined that no such 'exception' to the intracorporate conspiracy doctrine 'is recognized by Pennsylvania state courts.'" *Accurso*, 23 F. Supp. 3d at 515 (quoting *Lilly v. Boots & Saddle Riding Club*, No. 57 C.D. 2009, 2009 WL 9101459, at *6 (Pa. Commw. Ct. July 17, 2009)).

Consequently, it is not clear whether such an exception to the intracorporate conspiracy doctrine exists in Pennsylvania law.

"In the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide this case." *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009). "In predicting how the highest court of the state would resolve the issue, [the Court] must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir. 1980)). Because the Pennsylvania Supreme Court has neither recognized nor rejected an exception to the intracorporate conspiracy doctrine for conduct outside the scope of employment, this Court must endeavor to predict how that body would rule on this issue.

Pennsylvania courts have often applied the intracorporate conspiracy doctrine without elaborating on its reasoning or its relationship to the scope of employment, but they ordinarily apply the doctrine when defendants allegedly conspired with other agents or the principal corporation *on behalf of the principal corporation*. *See, e.g.*, *Lackner* 892 A.2d at 26 (alleging a conspiracy to engage in improper accounting practices to deprive plaintiff of promised bonuses); *Rutherfoord v. Presbyterian-University*, 612 A.2d 500, 502 (Pa. Super. Ct. 1992) (alleging a conspiracy to terminate plaintiff's employment with defendant company); *Weiner v. Markel Int'l Ins. Co.*, No. 2005-1045, 2006 WL 1142484 (Pa. Ct. Comm. Pl. Apr. 25, 2006) (alleging a conspiracy to refuse to pay benefits); *Rick's Original Philly Steaks, Inc. v. Reading Terminal Market Corp.*, No. 2008-3822, 2008 WL 1780822 (Pa. Ct. Comm. Pl. Feb. 20, 2008) (alleging

conspiracy between landlord and agent to refuse to renew lease). Here, in contrast, Mr. Cannon alleges that the Officers conspired with each other to commit an intentional tort *outside* the scope of their employment and providing no benefit to the City or the Philadelphia Police Department.[2]

A useful, analogous decision from the Pennsylvania Superior Court is *Shared Communications Services of 1800-80 JFK Blvd. Inc. v. Bell Atlantic Properties Inc.*, 692 A.2d 570 (Pa. Super. Ct. 1997). In *Shared Communications*, the defendants argued that "a corporate parent and its wholly owned subsidiary cannot, as a matter of law, be held liable for civil conspiracy." *Id.* at 572. They argued that "a parent corporation and its wholly owned subsidiary are essentially one entity and that they are therefore incapable of making an agreement with one another that could serve as the basis for a conspiracy." *Id.* The Superior Court held that "it does not logically follow that a parent and its wholly owned subsidiary can never be found to have 'conspired' in any other context." *Id.* Finding it relevant that "a corporate parent may have varying degrees of involvement with its corporate subsidiary," *id.* at 574, the Superior Court held that the intracorporate conspiracy doctrine's application must be analyzed on a case-by-case basis. Similarly, looking to the particular facts of the instant case, Mr. Cannon's Complaint alleges that the conspiring Officers were acting outside the scope of their employment and the tort that they allegedly committed was neither directed by nor of benefit to the City or the Philadelphia Police Department.

---

[2] Although the Summary of Pennsylvania Jurisprudence 2d cites to federal case law to support the proposition, the treatise suggests that Pennsylvania law will recognize an exception to the intracorporate conspiracy doctrine under circumstances similar to those in this case. *See* Summ. Pa. Jur. 2d § 13:6 ("Generally, a corporation cannot conspire with itself or with its officer and agents *when they act solely for the benefit of the corporation and not on their own behalf*. Officers or directors of a corporation cannot conspire with the corporation when acting in that capacity because the law recognizes such persons in their official capacity as merely a part of the single, corporate body with regard to the corporation's dealings with third parties.").

Ultimately, the Court finds persuasive the reasoning of the federal courts in Pennsylvania that have adopted a limited scope-of-employment exception to the intracorporate conspiracy doctrine, and notes that such an exception is logically consistent with Pennsylvania law and common sense. It cannot be the case that co-agents can never be liable for civil conspiracy—even if the alleged conspiracy was outside the scope of their employment—merely because they happen to be co-workers. There must be some connection between the alleged conspirators' status as co-agents and the alleged tort for the doctrine to preclude a finding of liability.

In this case, Mr. Cannon alleges that Officer Willis conspired to commit various predicate torts, namely the constitutional torts under § 1983 in Counts 2, 4, and 6. He alleges facts that, if true, show that Officer Willis conspired with Officers Doe 1 and Doe 2 for their own benefit and not for the benefit of the City or the Philadelphia Police Department. Based on these allegations, the Court will deny the Motion to Dismiss the civil conspiracy claim against Officer Willis in his individual capacity.[3]

## V. CONCLUSION

The Court will deny the Motion to Dismiss as to the civil conspiracy claim against Officer Willis in his individual capacity (Count 13), but grant the Motion to Dismiss as to the Fourth Amendment claim (Count 1), the First Amendment claim (Count 3), and the Equal Protection claim (Count 5).

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[3] To the extent the Complaint seeks to state a claim against Officer Willis in his official capacity, that claim is barred by sovereign immunity. *See Lakits v. York*, 258 F. Supp. 2d 401, 405 (E.D. Pa. 2003) ("[S]uits against municipal employees in their official capacities are 'treated as claims against the municipal entities that employ these individuals.'" (internal citations omitted)).