IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEVON CANNON, | : | |
|        *Plaintiff*, | : | CIVIL ACTION |
| | : | |
|    v. | : | |
| | : | |
| POLICE OFFICER AARON WILLIS et al., | : | No. 14-5388 |
|        *Defendants*. | : | |

MEMORANDUM

PRATTER, J.                                                                                               AUGUST 19, 2016

## I.   INTRODUCTION

Devon Cannon encountered Philadelphia police officers in December 2012. This lawsuit, in which Mr. Cannon alleges that his constitutional rights were violated and that he was the victim of various state torts, followed. He sought to pursue the City and County of Philadelphia, former Philadelphia Police Commissioner Charles Ramsey, Philadelphia Police Officer Aaron Willis, and two "John Doe" Philadelphia Police Officers. By Order dated December 30, 2014, the Court dismissed all counts against the City and County of Philadelphia and Commissioner Ramsey. Officer Willis now seeks summary judgment on the remaining counts.

## II.   FACTUAL BACKGROUND

Mr. Cannon was arrested for disorderly conduct in the parking lot of a hardware store. Mr. Cannon and Officer Willis described their accounts of the incident during their respective depositions. Mr. Cannon claims that Officer Willis followed him and a friend, Andre Myers, as they drove to the parking lot from several blocks away. Mr. Cannon and Mr. Myers both noticed the police car following them. Once Mr. Cannon parked his car in the hardware store parking lot, he and Mr. Myers got out of the car and started walking towards the contractors' entrance to the store. Upon realizing that Officer Willis's police car had entered the parking lot behind

1

them, Mr. Cannon turned towards Officer Willis's car and yelled at Officer Willis that he should come in and shop if he was so interested in following the two men. Officer Willis then sped towards the entrance to the store in his car and began yelling curse words and homophobic slurs at Mr. Cannon. Mr. Cannon yelled back, and Officer Willis told Mr. Cannon to put his hands on the hood of the police car. At his deposition, Mr. Cannon admitted to saying to Officer Willis, "What kind of asshole are you?" and "You're an asshole. You're a fucking asshole." Mr. Myers testified at Mr. Cannon's criminal trial that Mr. Cannon responded to Officer Willis's question, "What did you say?" by stating, "What you a fucking homo? You must be a fucking faggot. You are following us." However, Mr. Cannon testified that Officer Willis was the first person to use homophobic slurs during the altercation.

Officer Willis then frisked Mr. Cannon, handcuffed him, and placed him under arrest. Once Mr. Cannon had been placed in the back seat of the police car, Officer Willis called for backup, and drove over to where Mr. Cannon had parked his car. Two other officers arrived, and the three officers then searched Mr. Cannon's car, without his consent, three times. The officers found Mr. Cannon's driver's license and the pink slip to his car.

Mr. Cannon claims that he had $800 dollars in cash in his car, and that he saw the officers at one point hand something off to each other, but that he could not make out exactly what it was. He further testified that upon returning to his car after being booked at the police station, the $800 was missing. When asked how he came to possess the $800, Mr. Cannon stated that the money came from unemployment benefits. When pressed as to how he physically obtained the money, he testified that he used a debit card to withdraw eight $100 bills from an ATM. Mr. Cannon could not remember from which ATM he withdrew the money, and claimed that he might have had to withdraw the money in multiple transactions. Mr. Cannon did not provide any

corroborating evidence of the withdrawal of the money, such as a receipt from the ATM or testimony from any other witness that he did indeed have the money in his car before the incident.

  Officer Willis, on the other hand, testified that he did not follow Mr. Cannon to the hardware store parking lot. Instead, he testified that he was filling out paperwork while parked in the parking lot when he heard Mr. Cannon yelling and saw him waving his arms. Officer Willis, believing Mr. Cannon was perhaps in need of assistance, sped over to where Mr. Cannon was walking. He testified that, upon arrival at the entrance to the store, Mr. Cannon began yelling vulgarities at him, including racial slurs. Officer Willis then instructed Mr. Cannon to stop yelling and to calm down. When Mr. Cannon did not stop, Officer Willis instructed Mr. Cannon to put his hands on the hood of the police car and conducted a frisk. When Mr. Cannon refused to calm down and stop shouting, Officer Willis arrested him. After placing Mr. Cannon under arrest, Officer Willis testified that he then turned around and noticed a crowd gathering around the contractors' entrance to the store. Officer Willis then placed Mr. Cannon in the back seat of the police car and asked Mr. Cannon for his name. When Mr. Cannon provided a false name, Officer Willis asked for identification. Mr. Cannon gave his real name and said that his photo ID was in his car. Officer Willis drove across the parking lot to where Mr. Cannon's car was parked and called for backup. When two additional officers arrived, the officers searched through Mr. Cannon's car for his ID. Eventually they found his ID and the pink slip for his car. Officer Willis did not remember the exact location within the car where the officers found the ID.

  In addition to the deposition testimony of Mr. Cannon and Officer Willis, the record contains surveillance video footage which depicts the incident from various angles in the parking

lot. Unfortunately, the video sheds little light on the factual disputes between the deposition testimony of Mr. Cannon and Officer Willis. While the video does not depict any crowd forming around the two individuals during the incident, Officer Willis testified that the crowd had formed just inside the entrance to the store, an area which is not covered by the angles at which the surveillance cameras were positioned. Furthermore, while Officer Willis concedes that the surveillance video shows an object being passed from one officer to another, the video is not clear enough to identify the object. Officer Willis testified that the object he was given by the other officer was the set of keys to Mr. Cannon's car, not money.

At Mr. Cannon's initial criminal proceeding, Mr. Myers testified that Mr. Cannon had yelled vulgarities and homophobic slurs at Officer Willis. Mr. Cannon was found guilty. During that initial proceeding, Mr. Cannon attempted to play the surveillance video, however, he did not have the proper equipment. In making his ruling, the presiding judge stated:

> Mr. Cannon, I think clearly you are going to need that video, if you want to appeal this. I am going to find you guilty. You can bring the video and you need to advise the Commonwealth and give them a copy beforehand and then maybe that will straighten it out. But as of now, I am finding you guilty and fining you $100 plus costs.

Def's Br. Ex. 3. Mr. Cannon attached a criminal docket sheet to his response to the pending motion which reflects that he was found not guilty at a *de novo* trial; however, he did not produce the transcript from that proceeding.

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict

4

for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

## IV.   DISCUSSION

In his motion, Officer Willis seeks summary judgment as to the following claims: (1) § 1983 claims based on violations of the Fourth Amendment; (2) § 1983 claim based on a violation of the First Amendment; (3) § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment; (4) assault; (5) false arrest and false imprisonment; (6) intentional infliction of emotional distress; (7) malicious prosecution; (8) abuse of process; (9) conversion; and (10) civil conspiracy. Several of these claims have been withdrawn by Mr. Cannon.[1] The Court will now address the remaining claims.

---

[1] Plaintiff's counsel agreed to withdraw Count 6 (equal protection claim) during Mr. Cannon's deposition. During oral argument held on this motion, counsel withdrew Count 7 (assault) and Count 9 (intentional infliction of emotional distress).

### A.     Fourth Amendment Claims and State Law Tort Claims for False Arrest, False Imprisonment, and Malicious Prosecution

Officer Willis argues that Mr. Cannon's § 1983 claims based on violations of the Fourth Amendment[2] and his state law claims for false arrest, false imprisonment, and malicious prosecution all must fail because probable cause existed for the arrest of Mr. Cannon. Indeed, for Mr. Cannon to prevail on any of these claims, he must demonstrate a lack of probable cause for the police actions. *See Clifton v. Borough of Eddystone*, 824 F. Supp. 2d 617, 623 (E.D. Pa. 2011) (stating that "[a]n arrest is lawful under the Fourth Amendment only if it is supported by probable cause"); *Karkut v. Target Corp.*, 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (indicating that state law claims for false arrest, false imprisonment, and malicious prosecution are unsuccessful without a showing of a lack of probable cause).

As an initial matter, Officer Willis argues that the fact that Mr. Cannon was actually found guilty of disorderly conduct means that probable cause for his arrest and prosecution necessarily existed. Although Officer Willis does not identify it as such, this argument invokes the theory of issue preclusion – because another court has already determined that probable cause existed for the arrest of Mr. Cannon, this Court is precluded from determining that probable cause did not exist. The argument is somewhat complicated, however, by the fact that in a *de novo* trial, Mr. Cannon was found not guilty of the offense.

Such a situation raises a conflict between the authority relating to Mr. Cannon's § 1983 claims based on violations of the Fourth Amendment and his state law claims. In conjunction

---

[2] Count 2 of Mr. Cannon's Complaint alleges that the entire incident, including the seizure of Mr. Cannon and the search of his car, constitutes a violation of the Fourth and Fourteenth Amendments. Officer Willis's motion fails to address any of Mr. Cannon's claims related to the search of his car. Thus, the claims in Count 2, to the extent they relate to the allegedly illegal search of Mr. Cannon's car, are not at issue in this motion and will proceed to trial.

with the Restatement (Second) of Torts § 667, various states have developed a common law presumption whereby any conviction of a crime conclusively establishes the existence of probable cause, even if the conviction is subsequently overturned.  *See Heck v. Humphrey*, 512 U.S. 477, 486 n.4 (1994).  The Third Circuit Court of Appeals has ruled that such a presumption does not apply to § 1983 actions. *Montgomery v. De Simone*, 159 F.3d 120, 125 (3d Cir. 1998). Therefore, the fact that Mr. Cannon was originally found guilty of disorderly conduct is not conclusive as to the probable cause analysis under his § 1983 claims, and the Court must analyze whether probable cause existed for his arrest.  *See id.*  By the same token, of course, the fact that Mr. Cannon was found not guilty at the *de novo* trial does not mean there was no probable cause for the police action.  *See Gorman v. Bail*, 947 F. Supp. 2d 509, 518 (E.D. Pa. 2013) (citing *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005); Restatement (Second) of Torts § 667(2).

The law is less settled as to Mr. Cannon's state law claims for false arrest, false imprisonment, and malicious prosecution.  "The Pennsylvania Supreme Court has apparently not determined what preclusive effect should be given to a conviction that was later overturned in a subsequent malicious prosecution suit." *Mosley v. Wilson*, 102 F.3d 85, 92 (3d Cir. 1996). Intermediate appellate courts in Pennsylvania have been inconsistent in dealing with such a situation. *Compare McGriff v. Vidovich*, 699 A.2d 797, 800 (Pa. Commw. Ct. 1997) (concluding that "probable cause is conclusively established to exist at the time the arrest was made when there is a guilty plea or conviction"), *and Cosmas v. Bloomingdales Bros.*, 660 A.2d 83, 86 n.2 (Pa. Super. Ct. 1995) (stating that "even if [a] conviction is later overturned, it is conclusive proof of the existence of probable cause, unless the convicted party can show fraud or other undue influences at work in the conviction proceedings"), *with Cap v. K-Mart Disc. Stores, Inc.*,

515 A.2d 52, 54 (Pa. Super. Ct. 1986) (ruling that an initial conviction before a justice of the peace which was subsequently overturned was not conclusive as to the probable cause analysis on the plaintiff's malicious prosecution claim). Even courts like *McGriff* and *Cosmas*, which have concluded that an overturned conviction necessarily establishes probable cause, have acknowledged exceptions to this harsh rule, allowing the plaintiff the opportunity to show that the conviction resulted from fraud or undue influence. *See Cosmas*, 660 A.2d at 86 n.2 (allowing for the presumption to be rebutted by a showing of fraud or undue influence); Restatement (Second) of Torts § 667(1) (stating that a conviction, even if subsequently overturned, conclusively establishes probable cause "unless the conviction was obtained by fraud, perjury or other corrupt means"). Other courts have alluded to an exception if the plaintiff can show that the conviction stemmed from a clear mistake or error of law. *See Heck*, 512 U.S. at 486 n.4 (noting that in jurisdictions that developed the conclusive presumption, "early on it was recognized that there must be exceptions to the rule in cases involving circumstances such as fraud, perjury, or mistake of law"); *Montgomery* 159 F.3d at 127 (Roth, J., dissenting) (opining that the common law presumption should apply to § 1983 claims but recognizing that under the common law rule, an overturned conviction is dispositive proof of probable cause "unless [that] conviction is *contrary to established law* or has been obtained by fraud, perjury or other corrupt means" (emphasis added)).

In *Mosley*, the plaintiff brought § 1983 claims and a state law malicious prosecution claim against a police officer following an arrest. 102 F.3d at 87. Although the plaintiff was initially convicted by a jury, his conviction was overturned on appeal due to improper communications between a witness for the prosecution and the jury foreperson. *Id.* at 88. After noting the split in the decisions from Pennsylvania's intermediate appellate courts, the court held

8

that even if Pennsylvania were to adopt the rule from *McGriff* and *Cosmas*, the district court still erred in denying the plaintiff the opportunity to litigate the issue of whether probable cause existed. *Id.* at 94. In so holding, the court stressed the importance of examining the reason for the reversal of the plaintiff's conviction, and concluded that the improper communication between the defense witness and the foreperson was the type of "undue influence" referred to in *Cosmas* and the Restatement. *Id.* at 92-93.

Similarly, in *Cohen v. Pratt*, No. CIV.A. 09-604, 2011 WL 5075082 (E.D. Pa. Oct. 26, 2011), the court found that summary judgment for the defendant on the plaintiff's state law malicious prosecution claim was inappropriate when the plaintiff was initially convicted, but had his conviction overturned on appeal. *Id.* at *3. While the plaintiff was originally convicted of knowing and intentional possession of a controlled substance, the conviction was overturned because no evidence of a drug transaction was presented by the prosecution and the plaintiff had submitted evidence which called the arresting officer's version of the events into question. *Id.* Citing those two reasons for the reversal of the plaintiff's conviction, the court held that the plaintiff had raised a genuine issue of material fact as to whether his conviction was procured by fraud. *Id.*

Viewing the record in the light most favorable to Mr. Cannon, the Court concludes that even if the Supreme Court of Pennsylvania were to adopt the rule from *Cosmas* and the Restatement, Mr. Cannon has presented evidence giving rise to a genuine dispute of material fact as to whether his initial conviction fits within one of the exceptions to that rule. While Mr. Cannon has not provided any opinion or transcript from the proceeding by which his conviction was overturned, he has produced evidence that he was in fact found not guilty at his *de novo* trial, raising at least the possibility of a lack of probable cause. In addition, like the plaintiff in

*Cohen*, Mr. Cannon has produced evidence that contradicts Officer Willis's version of the events.[3]  Based on the record presented, including the transcript from the initial trial at which Mr. Cannon was convicted,[4] the Court concludes that summary judgment is not warranted as to Mr. Cannon's state law claims for false arrest, false imprisonment, and malicious prosecution solely based on his initial conviction.

Having concluded that Officer Willis cannot secure summary judgment solely based on the fact that Mr. Cannon was initially convicted of disorderly conduct, the Court will now address Officer Willis's argument that, based on the record evidence, Mr. Cannon cannot establish a lack of probable cause.

Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco,* 318 F.3d 497, 514 (3d Cir. 2003).  When evaluating whether an officer had probable cause to arrest, the Court examines "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the

---

[3]  A material factual dispute remains as to whether Mr. Cannon's statements caused or unjustifiably risked a public disturbance.  Mr. Cannon's testimony that Officer Willis began the shouting match and that Officer Willis parked his vehicle so as to block traffic directly contradicts Officer Willis's testimony that Mr. Cannon was the instigator and the only one shouting.  Furthermore, the parties offer conflicting testimony as to whether a crowd actually gathered in front of the store.  While the surveillance video does not necessarily discredit Officer Willis's testimony, it at least suggests that a large crowd had not formed outside of the store.

[4]  The transcript of the proceeding during which Mr. Cannon was initially found guilty also supports the need for flexibility in the application of the presumption that an overturned conviction nonetheless necessarily establishes probable cause.  During that proceeding, Mr. Cannon did not present the video surveillance evidence because he lacked the proper equipment.  In finding Mr. Cannon guilty, the judge seemed to acknowledge a lack of finality, or at least some ambivalence, advising Mr. Cannon that he would be able to present the video evidence at his *de novo* appeal and stating that, "*as of now*, I am finding you guilty and fining you $100 plus costs" (emphasis added).

offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).  Probable cause is generally a question for the jury, but can be appropriate at summary judgment if a reasonable jury could not find a lack of probable cause.  *Montgomery*, 159 F.3d at 124.

Mr. Cannon was arrested for disorderly conduct under 18 Pa. Cons. Stat. § 5503(A)(3), which states: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: . . . (3) uses obscene language, or makes an obscene gesture."  *Id.*  For the purposes of this statute, language is "obscene" if it meets the test in *Miller v. California*, 413 U.S. 15 (1973).  *Com. v. Bryner*, 652 A.2d 909, 911 (Pa. Super. Ct. 1995).  The test sets forth the guidelines for determining what language constitutes obscenity as follows:

> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller*, 413 U.S. at 24.  Because the conduct in this case presents no literary, artistic, political or scientific value, the inquiry is "whether 'the average person, applying contemporary community standards,' would find that the utterance [or] the gesture, in the context of the circumstances of the case, appeal to the prurient interest and describe, in a patently offensive way, sexual conduct specifically defined by the applicable state laws."  *Com. v. Kelly*, 758 A.2d 1284, 1288 (Pa. Super. Ct. 2000).  Merely vulgar and offensive language does not necessarily constitute obscenity if it is not of a sexual nature.  *Clifton*, 824 F. Supp. 2d at 624.  "Emphatic and vulgar expressions of one's discontent with an official's actions, while distasteful to the ear and offensive to the ego, are not—standing alone—'obscene' . . . ."  *United States v. McDermott*, 971 F. Supp. 939, 943 (E.D. Pa. 1997).  In addition to the requirement that the words meet the *Miller*

11

test, whether "words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance." *Com. v. Hock*, 728 A.2d 943, 946 (Pa. 1999).

Officer Willis argues that, based on Mr. Cannon's admissions as well as the sworn testimony of Mr. Myers, probable cause existed to arrest Mr. Cannon. He cites to three admitted statements, arguing that the statements constitute record evidence that Mr. Cannon used obscene language: (1) "What kind of asshole are you?," (2) "You're an asshole. You're a fuckin' asshole," and (3) "what you a fucking homo? You must be a fucking faggot. You are following us." Such language is assuredly vulgar and offensive. It is a regrettable commentary on contemporary life to acknowledge – as much as this Court would hope not to – that there are many in the community who barely even notice the utterance of such low language. Accordingly, Mr. Cannon's words do not absolutely qualify as obscenity under the *Miller* test. *See Clifton*, 824 F. Supp. 2d at 624-25 (concluding that plaintiff did not use obscene language when she stated to a police officer, "you asshole Eddystone mother-fucking cop."); *Tate v. W. Norriton Twp.*, 545 F. Supp. 2d 480, 487 (E.D. Pa. 2008) (holding that the plaintiff's statements, "[s]he needs f—ing help!" and "[w]hat, the f-k word?" were disrespectful but not obscene); *Commonwealth v. Kelly*, 758 A.2d 1284, 1288 (Pa. Super. Ct. 2000) (holding that plaintiff who said "'[f]uck you, asshole' and gave the worker the 'finger'" could not be convicted of disorderly conduct). Indeed, Officer Willis offers no arguments that the curse words and homophobic slurs used by Mr. Cannon were sexual in nature or that they would appeal to anyone's prurient interest. Rather, Officer Willis asserts, in a conclusory fashion, that "the record is clear that Plaintiff used obscene language in and around the entrance to [the hardware store]."[5] Such an

---

[5] The Court is not aware of the level of language used by people at this particular hardware store, but assumes a regular clientele of parents accompanied by children and others

assertion, unsupported by any caselaw, does not establish that a reasonable jury could not conclude that Officer Willis lacked probable cause to seize or arrest Mr. Cannon pursuant to 18 Pa. Cons. Stat. § 5503(A)(3).

Consequently, because it is conceivable that a reasonable jury could find that Officer Willis lacked probable cause to arrest Mr. Cannon under 18 Pa. Cons. Stat. § 5503(A)(3), Officer Willis cannot secure summary judgment on Mr. Cannon's § 1983 claims based on violations of his Fourth Amendment rights or his state tort claims for false arrest, false imprisonment, and malicious prosecution.[6] Of course, Officer Willis would be given full opportunity to pursue the same arguments at trial.

### i.    Qualified Immunity

Even if probable cause was lacking, Officer Willis argues Mr. Cannon's § 1983 claims for violations of the Fourth Amendment fail because Officer Willis is entitled to qualified immunity.  For Mr. Cannon to survive summary judgment, he bears the initial burden of proving that Officer Willis not only violated his constitutional rights, but that he violated a "clearly established" right.  *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).  A right is clearly established when "a reasonable official would understand that what he is doing violates the right." *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001).  Once a constitutional violation is established, the court should consider whether the officer reasonably believed his actions were legal under the circumstances.  *Showers v. Spangler*, 182 F.2d 165, 171 (3d Cir. 2000).

---

who ought to be able to shop without being inundated by foul language in the ordinary course of commerce.

[6] In addition to Officer Willis's probable cause arguments failing because he has not established that a reasonable jury would necessarily conclude that Mr. Cannon's words were obscene, a material factual dispute remains as to whether Mr. Cannon's words caused or unjustifiably risked a public disturbance.  *See* n.4.  Consequently, a jury must determine whether, based on the facts presented at trial, Officer Willis had probable cause to arrest Mr. Cannon for disorderly conduct.

Officer Willis argues that, because Mr. Cannon admitted to using vulgar language toward Officer Willis, "there can be no legitimate dispute that a reasonable police officer who knew these facts would believe it was constitutionally permissible to place the person under arrest." Def.'s Br. at 10.  Unfortunately for Officer Willis, the requirement under Pennsylvania law that "obscene language" under 18 Pa. Cons. Stat. § 5503(A)(3) meet the test outlined in *Miller* is again an obstacle, making a belief that the curse words and homophobic slurs used by Mr. Cannon qualified as obscenities under the statute not a patently reasonable belief.  At the time of the incident, under Pennsylvania law, a person could not be arrested for disorderly conduct for merely using vulgar or offensive language that is not sexual in nature.  *See, e.g.*, *Primrose v. Mellott*, No. CIV.A. 1:11-00835, 2012 WL 2321384, at *6 (M.D. Pa. June 19, 2012) (holding that police officer was not entitled to qualified immunity after arresting the plaintiff for using profane and vulgar language and documenting caselaw reflecting that an arrest for merely that conduct was clearly established as unconstitutional).

Moreover, the factual dispute as to whether Mr. Cannon's words and actions caused or unjustifiably risked a public disturbance also precludes a finding that Officer Willis is entitled to qualified immunity at this time.

Consequently, the Court will deny Officer Willis's motion as to his qualified immunity defense to Mr. Cannon's § 1983 claims based on violations of his Fourth Amendment rights.

**B.     First Amendment Claim**

Mr. Cannon also asserts claims under § 1983 for violations of his First Amendment rights, claiming that he was retaliated against after exercising those rights.  In order to assert a First Amendment retaliation claim, the plaintiff must establish three elements: (1) that he engaged in constitutionally protected conduct, (2) that the defendant retaliated in a way sufficient

to deter a person of ordinary firmness from exercising his constitutional rights, and (3) the existence of a causal link between the protected conduct and the retaliatory action. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

Officer Willis argues that Mr. Cannon has not produced evidence satisfying any of the three elements of his claim. Mr. Cannon responds by arguing that he was engaged in constitutionally protected conduct in the form of protesting being followed by Officer Willis and that he was then unlawfully arrested. Mr. Cannon further argues that the fact that vulgar language was used in conjunction with the protest is inconsequential.

Neither party cites any caselaw on the issue other than Officer Willis correctly stating the three necessary elements. The Court, however, finds the factual scenario in *Clifton*, 824 F. Supp. 2d 617, to be analogous. In *Clifton*, the plaintiff was arrested in a shopping center parking lot under the same disorderly conduct statute as Mr. Cannon. *See id.* at 621. The language used by the plaintiff in *Clifton* has already been quoted above. There was conflicting evidence as to how loud the plaintiff's statement was and what kind of crowd was attracted to the scene. *Id*. at 623. The court ruled that because the plaintiff's statement was neither obscenity nor "fighting words," as defined by the Supreme Court, the statement was protected speech. *Id*. at 628. The court further ruled that the arrest and prosecution for disorderly conduct qualified as retaliatory conduct and that the temporal proximity between the arrest and the statement satisfied the causation element. *Id*.

Having already concluded that a jury must determine whether Officer Willis had probable cause to arrest Mr. Cannon and whether that arrest was lawful, Officer Willis is likewise not entitled to summary judgment as to Mr. Cannon's First Amendment claim. Mr. Cannon has provided sufficient disputed facts from which a reasonable jury could conclude that Mr. Cannon

engaged in protected speech, and that he was retaliated against due to that speech. As in *Clifton*, the causal link here may be inferred by a reasonable jury based on the close temporal proximity of the speech and the subsequent arrest. Consequently, the Court will deny Officer Willis's motion as to Mr. Cannon's First Amendment claim.

### C. Conversion

Officer Willis also argues that he is entitled to summary judgment on Mr. Cannon's conversion claim. Under Pennsylvania law, "[t]he elements of conversion are: (1) the deprivation of another's right of property in, or use or possession of, a chattel; (2) without the owner's consent; and (3) without lawful justification." *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998). Conversion must be intentional. *Parker Oil Co. v. Mico Petro & Heating Oil, LLC*, 979 A.2d 854, 860 (Pa. Super. Ct. 2009). "Specific intent is not required, however, but rather an intent to exercise dominion or control over the goods which is in fact inconsistent with the rights establishes the tort." *Id*. The elements of conversion may be proved by circumstantial evidence. *See Royal Ins. Co. (U.K.) v. Ideal Mut. Ins. Co.*, 649 F. Supp. 130, 137-38 (E.D. Pa. 1986). Generally, a party offering only circumstantial evidence to prove a claim must offer evidence that "so preponderate[s] in favor of the offeror's conclusion that it outweighs any other evidence and reasonable inferences therefrom which are inconsistent therewith." *Northcraft v. Edward C. Michener Associates, Inc.*, 466 A.2d 620, 628 (Pa. Super. Ct. 1983).

Mr. Cannon claims that Officer Willis converted the $800 that was allegedly inside Mr. Cannon's car before the search. In his motion, Officer Willis argues that because Mr. Cannon admits that he did not see Officer Willis take money from his car, he cannot proceed on his conversion claim because he has brought forth no evidence that Officer Willis ever exercised

16

dominion or control over Mr. Cannon's property.  Furthermore, Officer Willis argues that Mr. Cannon's claim that he had $800 in his car is not credible, nor even reasonable, because Mr. Cannon provided a completely implausible explanation of how he acquired the $800, and was unable to offer any corroborating evidence to substantiate the claim.  Based solely upon Mr. Cannon's self-serving yet implausible testimony, Officer Willis asserts that the record does not support a genuine dispute as to whether Officer Willis converted any of Mr. Cannon's property because a reasonable jury could not find in Mr. Cannon's favor.

In response, Mr. Cannon argues that a conversion claim may be supported by circumstantial evidence.  He argues that a reasonable jury may simply use his testimony that the money was in the car before the search and missing after the search in order to conclude that the money was converted by Officer Willis.  Furthermore, he argues that the surveillance video shows one of the officers passing some object to Officer Willis, creating a genuine dispute of material fact for the jury to determine whether the object was his money.  While Officer Willis testified at his deposition that the object was a set of keys, Mr. Cannon claims it was the $800.

Mr. Cannon has failed to satisfy his burden of demonstrating a "genuine" dispute of material fact as to his conversion claim.  *See Anderson*, 477 U.S. at 248.  While Mr. Cannon is correct to point out that his conversion claim may be supported by circumstantial evidence, he has failed to put forth sufficient circumstantial evidence such that his claim should proceed to a jury.  Mr. Cannon's testimony as to how he came to possess the money is so implausible that a reasonable jury could not find in his favor. Without any type of corroborating evidence such as an ATM receipt or testimony from another witness that the money existed and was in Mr. Cannon's car, the Court finds Mr. Cannon's self-serving testimony that he withdrew eight $100 bills from an ATM to be unreasonable, such that a jury should not be asked to decide his

conversion claim. Although the surveillance video does indeed depict one officer passing an object to another officer, that evidence does nothing to establish the existence of the $800. Mr. Cannon has not produced sufficient circumstantial evidence supporting his conversion claim to allow the claim to be heard by a jury. Consequently, the Court will grant Officer Willis's motion as to the conversion claim.

### D. Civil Conspiracy

Officer Willis offers similar arguments as to Mr. Cannon's civil conspiracy claim as were asserted as to the conversion claim – because Mr. Cannon has not brought forth sufficient evidence to establish the existence of the money, he is unable to prove that the officers engaged in any unlawful act, or even that they intended to do so. Under Pennsylvania law, "[t]o prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means," *Thompson Coal Co. v. Pike Coal. Co.*, 412 A.2d 466, 473 (Pa. 1979), "and that they acted with malice," *Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 174 (Pa. 1997).

Mr. Cannon responds by again pointing to the circumstantial evidence in the form of his testimony that the money was in the car before the search and was no longer in the car following the search. Additionally, Mr. Cannon points to Officer Willis's deposition testimony that he had conversations with the other officers and that one of the other officers shined a flashlight in Mr. Cannon's car during the search. According to Mr. Cannon, these conversations coupled with the video which depicts some object being passed between two of the officers on the scene provide sufficient evidence of a civil conspiracy, such that the claim should proceed to trial.

Because the Court has concluded that Mr. Cannon has failed to rebut Officer Willis's initial showing that a genuine dispute of material fact does not exist as to the conversion claim,

the claim for civil conspiracy likewise fails. Having failed to establish the existence of a genuine dispute of material fact that an unlawful act occurred, Mr. Cannon cannot satisfy the elements of a claim for civil conspiracy. Consequently, the Court will grant Officer Willis's motion as to Mr. Cannon's civil conspiracy claim.

### E. Abuse of Process

Finally, Officer Willis moves for summary judgment on Mr. Cannon's state law claim for abuse of process. One element of the claim is "an 'abuse' or 'perversion' of process *already initiated*." *Kedra v. Nazareth Hosp.*, 868 F. Supp. 733, 738 (E.D. Pa. 1994) (emphasis added) (citing *Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984)). In distinguishing between a claim for malicious prosecution and one for abuse of process, the Supreme Court of Pennsylvania has stated, "[m]alicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued." *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987) (quoting *Publix Drug Co. v. Breyer Ice Cream Co.*, 32 A.2d 413, 415 (Pa. 1943)). None of the record evidence in this case supports a finding that Officer Willis abused a process that had already been initiated. Rather, Mr. Cannon's claims are that Officer Willis was not justified to initiate any sort of process, or even an arrest, in the first place. Consequently, the Court will grant Officer Willis's motion as to Mr. Cannon's state law claim for abuse of process.

### V. CONCLUSION

For the foregoing reasons, the Court will deny Officer Willis's motion as to Mr. Cannon's § 1983 claims based on violations of his Fourth Amendment rights, Officer Willis's qualified immunity with respect to those claims, Mr. Cannon's state tort claims for false arrest, false imprisonment, and malicious prosecution, and his § 1983 claims based on violations of his

First Amendment rights.  The Court will grant the motion as to Mr. Cannon's state law claims for conversion, civil conspiracy, and abuse of process.  An appropriate Order follows.

>BY THE COURT:
>
>S/Gene E.K. Pratter
>GENE E.K. PRATTER
>UNITED STATES DISTRICT JUDGE